UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| THRIVENT FINANCIAL FOR LUTHERANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-146-SKL |
| | ) | |
| SARA KATHRYN CAMP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is a motion seeking Court approval of a settlement involving a minor filed by Defendant Donna Fernandes ("Defendant Fernandes"), the mother and guardian of the minor, Defendant A.F. (the "Minor Defendant") [Doc. 21]. The parties have presented a copy of the signed Settlement Agreement and Release to the Court.

A hearing was held on December 18, 2015, to determine whether the parties' proposed settlement of this matter is in the best interest of the Minor Defendant. Present at the hearing were: (1) Defendant Fernandes and the Minor Defendant, (2) Attorney William G. Schwall ("Attorney Schwall") for Defendant Fernandes and the Minor Defendant, and (3) Attorney William A. Harris, III ("Attorney Harris") for Defendant Sara Kathryn Camp ("Defendant Camp"). Holly V. Rhea ("Attorney Rhea") for Plaintiff Thrivent Financial for Lutherans ("Plaintiff") participated by telephone.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

In connection with the divorce of Milton Terrell Fugate, Jr. ("Decedent") and Defendant Fernandes, and pursuant to a Permanent Parenting Plan entered by the Circuit Court of Cocke County, Tennessee in January 2004 (the "Parenting Plan"), Decedent was required to maintain a term life insurance policy in the minimum amount of $250,000.00 [Doc. 11-2 at Page ID # 188]. The Parenting Plan did not specify the Minor Defendant was to be the named beneficiary of the $250,000.00 policy or specify for how long the policy was to be maintained.  To date, no such policy has been located.

This matter arose when multiple individuals claimed an interest in the proceeds of a life insurance policy issued by Plaintiff on the life of Decedent for $80,000.00 ("the Policy").  The Policy named Decedent's former wife, Defendant Camp, as the beneficiary.  Plaintiff filed a complaint for interpleader against Defendant Camp, Defendant Fernandes, as parent and guardian of the Minor Defendant, the Minor Defendant, and Milton Fugate, Sr. (Decedent's father),[1] seeking a determination as to the proper beneficiary of the Policy proceeds and recovery of its costs and expenses in connection with the interpleader action.  Defendant Fernandes filed an answer and counter-complaint seeking a declaratory judgment to enforce the Parenting Plan and an award of the Policy proceeds to the Minor Defendant.

# II.    STANDARDS

When minors are involved in a settlement, the district court must make an independent determination that the settlement is in the minor's best interest.  *See Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997); *see also* Tenn. Code Ann. § 31-1-121.  In considering whether a

---

[1] Milton Fugate, Sr. affirmatively claimed no interest in the Policy, filed an unopposed motion to be dismiss from the action, and was dismissed as a party [Doc. 32].  Although Milton Fugate, Sr. is claiming no interest in the Policy proceeds and has been dismissed from this case, he has also signed the proposed settlement agreement.

2

settlement is in the best interest of the minor, a court "must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988).

In *Wright v. Wright*, 337 S.W.3d 166 (Tenn. 2011), the Tennessee Supreme Court held that courts should consider the ten factors set forth in the Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a) ("RPC 1.5") when determining a reasonable attorneys' fee along with determining whether the settlement protects the best interest of the minor. These ten factors are:

(1)    The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    The fee customarily charged in the locality for similar legal services;

(4)     The amount involved and the results obtained;

(5)    The time limitations imposed by the client or by the circumstances;

(6)    The nature and length of the professional relationship with the client;

(7)    The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)    Whether the fee is fixed or contingent;

(9)    Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)   Whether the fee agreement is in writing.

*Wright*, 337 S.W.3d at 176-77 (quoting Tenn. Sup. Ct. R. 8, RPC 1.5(a)). These factors are not exclusive and each factor may not be relevant in every case. *Id.* at 177 n.17.

Courts should not consider any fee agreement because it is not binding on the minor but rather "should review the case on the premise that there is no enforceable fee contract" and

3

determine "what the reasonable fee would be in the absence of a [fee] contract." *Id.* at 183. In the context of a settlement involving a minor, courts must balance the determination of what is a reasonable fee to ensure that attorneys have the necessary incentive to accept cases involving minors in the future and what is in the best interest of the minor considering the minor's present and future needs. *Id.* at 185.

### III. ANALYSIS

The proposed settlement is the result of arms' length negotiations and provides the Policy proceeds of $80,000.00 and accrued interest will be distributed as follows:

  a. The sum of $20,000.00 paid to Defendant Camp and $10,000.00 paid to her counsel, Attorney Harris;

  b. The sum of $4,500.00 paid to Plaintiff;

  c. The sum of $4,000.00 paid to Attorney Schwall; and

  d. The remaining sum of $41,500.00 plus all accrued interest paid to the Minor Defendant.

At the hearing, testimony about the proposed division of Policy proceeds between Defendant Camp and the Minor Defendant was presented. Decedent took out the Policy during his approximately eight-year marriage to Defendant Camp. Upon their divorce approximately two years ago, Decedent did not change the beneficiary designation. Defendant Camp has a good relationship with the Minor Defendant. The proposed settlement provides the Minor Defendant, who is currently 16 years old, with over half of the Policy proceeds.[2] All parties

---

[2] At the time of her parents' divorce, the Minor Defendant would reach the age of majority in approximately 14 years. Dividing the minimum required life insurance amount of $250,000.00 by 14 years, yields approximately $17,800.00 a year. The Minor Defendant reaches the age of majority in two years and the settlement yields more than $35,600.00 (i.e., $17,800.00 x 2 years).

agreed the settlement is fair and reasonable and in the best interest of the Minor Defendant who testified it is her intention to use the money for college when she reaches the age of majority.

The parties agreed that Tennessee law and the unique facts of this case informed the settlement negotiations. While the Parenting Plan required Decedent to maintain a term life insurance policy in the minimum amount of $250,000.00, the Parenting Plan is woefully silent as to the beneficiary designation or the term of the policy. The parties dispute whether the Policy could be applied to Decedent's monetary obligations to the Minor Defendant given the Decedent's failure to procure a policy under the ambiguous Parenting Plan. *See Holt v. Holt*, 995 S.W.2d 68, 77 (Tenn. 1999) (holding that when a divorce decree mandates that a former spouse maintain a life insurance policy and name a certain individual as a beneficiary, "the divorce decree creates in [that individual] a vested right to any life insurance policy obtained by the Decedent that satisfies the mandate in the decree."). Given the facts and circumstances of this case, the Court **FINDS** that the allocation of the Policy proceeds between the Minor Defendant and Defendant Camp is in the best interest of the Minor Defendant and that the proposed settlement will avoid costly and time-consuming litigation that could deplete the funds available for distribution to the Minor Defendant if she were successful in the litigation.

Under the terms of the settlement, Plaintiff and Attorney Schwall will receive attorneys' fees and expenses that deplete the Policy proceeds available to the Minor Defendant.[3] The Court has reviewed the testimony provided by affidavit and during the hearing to determine the appropriate fees in this case. *See Wright*, 337 S.W.3d at 185. Attorney Schwall entered into a contingency fee agreement with Defendant Fernandes on behalf of the Minor Defendant in

---

[3] During the hearing, Attorney Harris stated that he has a one-third contingency fee agreement with Defendant Camp and will receive $10,000.00 from Defendant Camp's total settlement amount of $30,000.00. It is not necessary for the Court to address the contingency fee arrangement between Defendant Camp and her attorney.

5

which he agreed to act as counsel for a one-third contingency fee plus expenses. He opined this case was difficult because it involved novel issues of law and required substantial research and factual proof regarding "violation of the divorce decree and related matters." [Doc. 29 at Page ID # 244-45, ¶¶ 4, 6, 13]. Upon his engagement, Attorney Schwall proceeded to obtain authenticated copies of the orders involving the life insurance requirement from the Cocke County Circuit Court, and he prepared a complaint to file in state court [*id.* at Page ID #245, ¶ 8]. Prior to Attorney Schwall's filing the state court complaint, however, Plaintiff filed the instant interpleader action in this Court. Attorney Schwall then filed a counter-complaint [Doc. 11] and subsequently negotiated the proposed settlement in this matter. Attorney Schwall explained that he had to set aside other matters to handle this action promptly. Mr. Schwall testified that he does not keep time on contingent fee cases, but he estimated that he had spent in excess of 50 hours on this case [Doc. 29 at Page ID # 246]. Attorney Schwall stated that he normally charges between $250 and $275 an hour.[4]

While it appears that Attorney Schwall has adequately represented the Minor Defendant, the Court is troubled that he has not kept records of his time as keeping accurate time records is part of the responsibility of an attorney seeking payment of fees in cases involving minors. *See Wright*, 337 S.W.3d at 181 ("[A]n attorney representing a minor should keep a record of time spent on the minor's case, even if that attorney does not ordinarily keep track of time as part of the attorney's practice."). In spite of the lack of contemporaneous time records, the Court **FINDS** a payment of attorney's fees is proper in this case. After considering the estimated time

---

[4] Attorney Harris stated that he has maintained time records and that he has spent approximately 50 to 60 hours on this matter. This would equal the hourly rate of $200.00 an hour in a non-contingency fee case (i.e., $10,000.00 / 50 hours = $200.00 an hour). As explained further herein, Attorney Rhea testified that her hourly rate in this matter is $200 an hour.

6

spent by Attorney Schwall, which is comparable to the time spent by Attorney Harris who has maintained records, and all of the remaining factors set forth in *Wright*, the Court **FINDS** that Attorney Schwall's requested, reduced fees and expenses totaling $4,000.00 are fair and reasonable and that payment of said fees and expenses from the Policy proceeds is in the best interest of the Minor Defendant.

Attorney Rhea testified as to Plaintiff's claim for attorneys' fees and expenses for bringing this interpleader action. Attorney Rhea testified that Plaintiff is paying reduced rates for this matter -- $280.00 an hour for partners' time, $200.00 an hour for associates' time, and $150.00 an hour for paralegals' time, which Attorney Rhea testified are reasonable and customary rates for this type of work. Attorney Rhea attested that her firm, Burr & Forman LLP, has represented Plaintiff for several years including in several interpleader matters. Attorney Rhea further stated that Plaintiff is entitled to recover its attorneys' fees because it is a disinterested stakeholder in this matter. In the proposed settlement agreement before the Court, Plaintiff is seeking the reduced amount of $4,500.00 for its attorneys' fees and expenses.[5]

Courts have discretion in determining whether to allow an interpleader plaintiff to recover attorneys' fees and costs and they are "rarely awarded as a matter of course." *Unum Life Ins. Co. v. Kelling*, 170 F. Supp. 2d 792, 794 (M.D. Tenn. Nov. 2, 2001) (internal quotation marks omitted). Based on the somewhat unique facts of this case and considering the factors set forth in *Wright*, the Court **FINDS** that $4,500.00 is a fair and reasonable recovery of Plaintiff's fees and expenses and the Court will exercise its discretion to award Plaintiff its attorneys' fees and costs totaling $4,500.00 as agreed by all parties.

---

[5] Upon filing its original motion to deposit funds and to be dismissed at the commencement of the case, Plaintiff did not seek recovery of its attorneys' fees. Thereafter, Plaintiff sought to recover $8,500.00 or approximately 10% of the total Policy proceeds.

7

Accordingly, the motion to approve the minor settlement [Doc. 21] is **GRANTED** and Plaintiff is **ORDERED** to pay the Policy proceeds in the amount of $80,000.00 plus accrued interest minus $4,500.00 for its fees and expenses to the Clerk Court within **10 days** of the entry of this order.

Upon receipt of the funds, the Court Clerk is **DIRECTED** to timely distribute and invest the Policy proceeds as follows:

- The total sum of $30,000.00 **SHALL** be paid to Defendant Camp and Attorney Harris;

- The sum of $4,000.00 **SHALL** be paid to Attorney Schwall; and

- The remainder of $41,500.00 plus accrued interest **SHALL** be invested by the Court Clerk for the benefit of the Minor Defendant until she reaches the age of majority. The Court Clerk is **DIRECTED** to invest the funds in an interest bearing account and to release the funds, including any accrued interest, to the Minor Defendant upon proof of identity and age of majority without further order of the Court.

It is further **ORDERED** that within **10 days** of the distribution and investment of the funds, the parties shall file a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The parties are hereby put **ON NOTICE** that the Court, pursuant to Federal Rule of Civil Procedure 41(b) and Eastern District of Tennessee Local Rule 68.1, will dismiss this action with prejudice if no stipulation of dismissal is timely filed.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE